**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ROSE O.,[1]

        **Plaintiff,**

                                    **Case No. 2:22-cv-4728**

    **v.**                                    **Magistrate Judge Norah McCann King**

MARTIN O'MALLEY,
**Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

      This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Rose O. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

      On July 11, 2012, Plaintiff filed her application for benefits, alleging that she has been disabled since April of that year because of asthma, hypertension, anxiety, and aortic valve prolapse. R. 12, 54, 139–44, 157. The application was denied initially and upon reconsideration.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

R. 77–81, 85–87. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ").

R. 88–90. ALJ Donna Krappa held a hearing, following which she concluded that Plaintiff was

not disabled within the meaning of the Social Security Act at any time from July 11, 2012, the

application date, through the date of that decision. R. 12–22. On appeal to this Court, United

States District Judge Susan D. Wigenton reversed that decision and remanded the action for

further proceedings. R. 34−61.

On remand, ALJ Krappa held another hearing. R. 292–318. In a decision dated February

2, 2018, she again concluded that Plaintiff has not been disabled within the meaning of the Social

Security Act since July 11, 2012 ("2018 decision"). R. 276–86. Following Plaintiff's timely

appeal from that decision, the undersigned reversed the Commissioner's 2018 decision and again

remanded the matter for further proceedings. R. 592–607.

On that second remand, the Appeals Council directed that the matter be assigned to

another ALJ. R. 608–12. On December 14, 2021, ALJ Scott Tirrell held a hearing, at which

Plaintiff, who was once again represented by counsel, testified, as did a vocational expert. R.

530–72. In a decision dated March 29, 2022, ALJ Tirrell also concluded that Plaintiff was not

disabled within the meaning of the Social Security Act from July 11, 2012, the date on which

Plaintiff filed her application, through the date of that decision. R. 512–23 ("2022 decision").

The Appeals Council did not assume jurisdiction of the case, making the 2022 decision the final

agency decision. 20 C.F.R. § 416.1484(a), (d). Plaintiff timely filed this appeal pursuant to 42

U.S.C. § 405(g). ECF No. 1. On March 29, 2023, Plaintiff consented to disposition of the matter

by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal

Rules of Civil Procedure. ECF No. 16.[3] On that same day, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE 2022 DECISION AND APPELLATE ISSUES

Plaintiff was 38 years old when she filed her application on July 11, 2012. R. 521. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the 2022 decision. R. 514.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: asthma; diabetes mellitus; obstructive sleep apnea with hypersomnia; migraine headaches; obesity; anxiety disorder; depressive disorder; post-traumatic sleep disorder ("PTSD"). *Id.* The ALJ also found that Plaintiff's diagnosed hypertension, vitamin B deficiency, upper respiratory infection, bilateral pneumonia, and COVID-19 infection were not severe, and that her alleged history of gestational diabetes mellitus, tendinitis of the left common extensor tendon with lateral

epicondylitis, and aortic valve prolapse were non-medically determinable impairments. R. 514–15.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 515–17.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 517–21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a child monitor. R. 521.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a mail clerk, an office helper, and a marker—existed in the national economy and could be performed by Plaintiff. R. 521–22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 11, 2012, the application date, through the date of the decision. R. 522.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the 2022 decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 12. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19.

IV.    **DISCUSSION**

A.    **Obesity**

Plaintiff first argues that the ALJ failed to properly consider, at steps three and four of the sequential evaluation, Plaintiff's obesity. *Plaintiff's Moving Brief*, ECF No. 12, pp. 17–36.[4] The Court disagrees.

In 2000, the Commissioner removed obesity as a "listed impairment," but the Court of Appeals for the Third Circuit has recognized that the removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "Rather, the Commissioner has since promulgated a series of SSRs, which indicate how obesity is to be considered under the listings." *Abigail L. v. Kijakazi*, No. CV 21-2275 (FLW), 2022 WL 16362468, at *9 (D.N.J. Oct. 27, 2022) (citations omitted). The Commissioner initially promulgated SSR 00-3p, which "replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Diaz*, 577 F.3d at 503. "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."). Most recently,

---

[4] Plaintiff's brief does not reflect page numbers. *See id.* For ease of reference, the Court refers to the CM/ECF page numbers appearing at the top of each page.

SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019. SSR 19-2p, 2019 WL 2374244, at *5 (May 20, 2019); *see also id*. at n.14 ("We will use this SSR beginning on its applicable date [of May 20, 2019]. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Other courts have observed that SSR 02-1p and SSR 19-2p "are largely consistent in their discussion of how obesity should be analyzed[.]" *Heck v. Comm'r of Soc. Sec. Admin*., No. 1:20CV2133, 2021 WL 6693720, at *10 (N.D. Ohio Dec. 28, 2021), *report and recommendation adopted sub nom. Heck v. Comm'r of Soc. Sec*., No. 1:20CV2133, 2022 WL 228163 (N.D. Ohio Jan. 26, 2022) (collecting cases); *see also Huntley v. Kijakazi*, No. 1:20CV862, 2021 WL 5834406, at *8 (M.D.N.C. Dec. 9, 2021) (agreeing with the Commissioner that under either SSR 02-1p or SSR 19-2p, "'the ALJ is tasked with explaining how he reached his conclusion on whether obesity causes any limitations' and is warned that 'the combined effects of a claimant's obesity with other impairments may be greater than might be expected without obesity'") (citations omitted).

SSR 19-2p advises that "[o]besity, when established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source (AMS), is an MDI [medically determinable impairment]." *Id*. at *2. This ruling addresses the determination of obesity as a severe impairment, as follows:

> When we evaluate the severity of obesity, we consider all evidence from all sources. We consider all symptoms, such as fatigue or pain that could limit functioning. We consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments. If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that

the impairment(s) is severe. We find, however, that the impairment(s) is "not severe" if it does not significantly limit [a person's] physical or mental ability to do basic work activities.

No specific weight or BMI establishes obesity as a "severe" or "not severe" impairment. Similarly, a medical source's descriptive terms for levels of obesity, such as "severe," "extreme," or "morbid," do not establish whether obesity is a severe impairment for disability program purposes. We do an individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe.

*Id*. at *3–4 (footnotes omitted). SSR 19-2p also specifically advises how to evaluate obesity

under the listings:

Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing. For example, obesity may increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing.

We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record.

*Id*. at *4. (footnotes omitted); *see also id.* at n.11 (citing 20 C.F.R. § 416.926). Accordingly, "an

ALJ must meaningfully consider the effect of a claimant's obesity, individually and in

combination with her impairments, on her workplace function at step three and at every

subsequent step." *Diaz*, 577 F.3d at 504; *see also Abigail L.*, 2022 WL 16362468, at *10

("Although the parties do not dispute that SSR 19-2p rescinded and replaced its predecessor SSR

02-01p, the Commissioner fails to cite a single authority that challenges the applicability of

*Diaz*'s meaningful review instruction. Notably, several courts in this district have continued to

apply such guidance in the context of SSR 19-2p.") (collecting cases). "For meaningful judicial

review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . .

but we do not 'require the ALJ to use particular language or adhere to a particular format in

conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (quoting *Jones,* 364 F.3d at 505). Notably, a claimant must demonstrate "*how* [the claimant's] obesity . . .  affect[s the claimant's] ability to perform basic work activities," not simply that it could impact such ability. *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (affirming denial of benefits where the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original).

In the present case, although Plaintiff did not allege disability due to her obesity in her disability report, R. 157, the ALJ nevertheless found that Plaintiff's obesity was a severe impairment at step two of the sequential evaluation. R. 514. At step three, finding that none of Plaintiff's impairments and combination of impairments met or medically equaled a listed impairment, the ALJ specifically considered Plaintiff's obesity as follows:

> It is noteworthy that although there is no specific medical listing regarding obesity, I have evaluated that impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 19-2p, which notes that obesity could complicate impairments of the musculoskeletal and other body systems, and could cause or contribute to limitation of exertional functions (e.g., standing, walking) and postural functions (e.g., climbing, crawling). SSR 19-2p further acknowledged that the combined effects of obesity with other impairments might be greater than would be expected without obesity. Given the susceptibility of the claimant's other impairments to complication from obesity, it is recognized as an additional "severe" impairment. Further, I have found that, although severe, the functional effects of the claimant's obesity do not combine with her other impairments to meet or equal any medical listing.

R. 516. At step three, the ALJ also specifically considered, *inter alia*, Listing 3.02, which addresses chronic respiratory disorders, Listing 3.03, which addresses asthma, and Listing 11.02, which addresses epilepsy. R. 515–16. When crafting Plaintiff's RFC for a limited range of light

work at step four,[5] the ALJ again considered Plaintiff's obesity, R. 519–20, as well as her visit to

an emergency department for asthma in approximately June 2012; an emergency room

department visit for headaches, shortness of breath, and leg swelling in July 2012, which

revealed, *inter alia*, 2+ pitting edema of her legs; a visit to an emergency room in August 2012

for complaints of atypical chest pain but no findings of leg edema or DVT; treatment by

Plaintiff's primary care physician in December 2012 for complaints of headache and asthma

exacerbation; treatment notes in January 2014 reflecting that she, *inter alia*, had an inhaler and

was on medication for diabetes mellitus; a June 2017 neurological consult that revealed, *inter*

*alia*, positive left Tinel's and Phalen's signs, but no atrophy and normal strength in all

---

[5] The ALJ found that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can: stand and walk for a combined total of up to four hours in an eight-hour work day; sit for a total of up to six hours in an eight-hour work day; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity, vibration, and to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation; never work at unprotected heights or work with machinery involving exposed moving mechanical parts; never operate a motor vehicle or operate heavy equipment; and tolerate no more than moderate noise levels. Further, the claimant should avoid work outdoors in bright sunshine; can never work with bright or flickering lights, such as would be experienced in welding or cutting materials; and can frequently perform handling, fingering, and feeling. The claimant can understand, remember, and carry out detailed, but uninvolved, instructions in the performance of simple, routine tasks; can sustain attention and concentration over an eight-hour workday, with customary breaks, on performing such tasks; can use judgment in making work-related decisions commensurate with this same type of work; and can adapt to changes in routine work settings. Lastly, the claimant can have occasional interaction with coworkers and supervisors, beyond any increased interactions initially required to learn the job, and can have occasional interaction with the public.

R. 517.

extremities, decreased sensation in the toes and less so in the knees, but intact sensation in the

left median nerve distribution; August 2017 records reflecting that Plaintiff was doing well on

medication but felt "foggy"; an EMG report noting probable peripheral neuropathy of the left

leg, but an EMG/NCV of the left extremities reflected no evidence of CTS or LS radiculopathy;

treatment in September 2017 for asthma or allergies; a reported BMI in July 2012 of 40.27 (5

foot 5, 242 lbs.); recorded weights in June 2017 of 214 lbs., in September 2017 of 98.486 kgs.,

and in October 2018 of 249 lbs.; a reported BMI in March 2021 of 37.28; and a recorded weight

in October 2018 of 249 pounds and a finding of 2+ leg edema clinically. R. 519–20. The ALJ

also noted that the record reflects no treatment records from October 2018 to March 2021, when

Plaintiff sought treatment for snoring, tiredness, poor sleep, and apnea; and that in May 2021,

Plaintiff was to start CPAP therapy and pulmonary function testing revealed mild obstructive and

mild restrictive lung defects. *Id*.

    In light of this record, the Court disagrees with Plaintiff's contention that the ALJ did not

meaningfully evaluate her obesity at step three as required by *Diaz,* 577 F.3d 500, or at step four

when crafting Plaintiff's RFC. *Plaintiff's Moving Brief*, ECF No. 12, pp. 17–36. In *Diaz*, the

Court of Appeals for the Third Circuit remanded the case because the ALJ had found obesity to

be a severe impairment at step two but did not discuss obesity at step three in combination with

the claimant's joint dysfunction. *Diaz*, 577 F.3d at 504–05 (stating, *inter alia*, that "[w]ere there

*any* discussion of the combined effect of Diaz's impairments, we might agree with the District

Court [and not remand the case]"). In the present case, although scant, the ALJ's express

discussion of Plaintiff's obesity at step three in combination with her other impairments, R. 514–

15, and again at step four in the context of her other physical impairments and symptoms, R.

519–20, serves to distinguish this case from *Diaz*. *See also Cherese M. B. v. Comm'r of Soc.*

*Sec.*, No. CV 20-17718, 2024 WL 1270834, at *6–8 (D.N.J. Mar. 26, 2024) (distinguishing *Diaz* and noting that the ALJ discussed the claimant's obesity specifically during each step of the sequential process and explicitly stated that he had considered the claimant's obesity in combination with her other impairments, which "is sufficient to satisfy the standard set forth in *Diaz*"); *Leonardis v. Comm'r of Soc. Sec.*, No. CV 18-13098, 2020 WL 6281606, at *3 (D.N.J. Oct. 27, 2020) (distinguishing *Diaz* and finding that the ALJ's statement that he considered obesity in accordance with the applicable Social Security rulings along with a discussion of the claimant's impairments was sufficient under Third Circuit law); *Farmer v. Comm'r of Soc. Sec.*, No. CV 19-13437, 2020 WL 6620152, at *2 (D.N.J. Nov. 12, 2020) (same); *cf. C.S. v. Comm'r of Soc. Sec.*, No. CV 19-20845, 2021 WL 5195702, at *5 (D.N.J. Nov. 9, 2021) ("Moreover, Plaintiff has failed to identify any record evidence showing that a more thorough consideration of obesity would have changed the ALJ's analysis. As such, the ALJ's analysis at step three was sufficient.").

Moreover, even if the ALJ's discussion at steps three and four were somehow deficient under *Diaz*, Plaintiff has not shown how any such error worked to her prejudice. Plaintiff does not explain how her obesity, individually or in combination with any other impairment, meets or medically equals a listed impairment nor does she identify any specific functional limitation caused by her obesity and not already included in the ALJ's RFC. *See generally Plaintiff's Moving Brief*, ECF No. 12. Neither the ALJ nor this Court will "make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment." SSR 19-2p, 2019 WL 2374244, at *4 (emphasis added); *see also Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021) (finding that, where the

claimant "fails to identify how his obesity would affect the five-step-evaluation process beyond a mere generalized response that it would 'obviously negatively impact [his] COPD and back pain[,]'" "remand is not required because Cosme has failed to demonstrate how consideration of his obesity would affect the outcome of the case") (citations omitted); *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) ("In any event, remand to reconsider her combined impairments is not required because Carter has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities" and that the claimant "does not point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities") (emphasis in original); *Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees, congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests otherwise."). Accordingly, Plaintiff, who bears the burden of proof at steps three and four of the sequential evaluation, has not shown that the ALJ's error, if any, in failing to more thoroughly discuss Plaintiff's obesity is anything other than harmless error that does not require remand. *See also Abigail L.*, 2022 WL 16362468, at *10 ("[E]ven assuming that Plaintiff is correct that the ALJ's analysis was deficient at steps three and four, Plaintiff fails to demonstrate how further consideration of her obesity would have changed the ALJ's ultimate determination that she was not entitled to benefits.").

### B.    Step Three

Plaintiff also challenges the ALJ's finding at step three of the sequential evaluation that

Plaintiff's mental impairments neither meet nor medically equal a listed impairment. *Plaintiff's Moving Brief*, ECF No. 12, pp. 36–44. Plaintiff's challenge is not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or medically equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

Listing 12.04 addresses depressive, bipolar, and related disorders, Listing 12.06 addresses anxiety and obsessive-compulsive disorders, and Listing 12.15 addresses trauma- and stress-

related disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, and 12.15. In order to

meet these Listings, a claimant must meet paragraph A[6] and either paragraph B or paragraph C

criteria of the Listings. *Id*. The paragraph B criteria are met when a claimant has an extreme

limitation of one, or a marked limitation of two,[7] of the following four mental functional areas:

understand, remember or apply information; interact with others; concentrate, persist, or

maintain pace; and adapt or manage oneself. *Id*. at §§ 12.04B, 12.06B, 12.15B. The paragraph C

criteria are met if the claimant's mental disorder is "serious and persistent[,]" *i.e.*, the claimant

has a medically documented history of the existence of the disorder over a period of at least two

years and there is evidence of both of the following: (1) medical treatment, mental health

therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that

diminishes the symptoms and signs of the claimant's mental disorder; and (2) marginal

adjustment, *i.e.*, the claimant has minimal capacity to adapt to changes in the claimant's

---

[6] The ALJ did not expressly discuss the paragraph A criteria of these Listings in the 2022 decision. R. 516–17. Plaintiff asserts that there is no such discussion because there is "no issue" or "dispute" and that it is a "'given'" that her mental impairments satisfy the criteria of paragraph A. *Plaintiff's Moving Brief*, ECF No. 12, p. 40. The Commissioner does not address Plaintiff's argument in this regard. *See generally Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19, pp. 24–27. However, once the ALJ determined that Plaintiff's mental impairments did not satisfy the paragraphs B or C criteria, there was no reason to expressly consider the paragraph A criteria. *See Lewis v. Comm'r of Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("In reviewing a case, 20 C.F.R. Part.404, Subpart P indicates that a claimant must prove both Paragraph A and B criteria. The ALJ simply chose to proceed with a full analysis of Paragraph B, and, upon determining that Paragraph B was not satisfied, chose not to address Paragraph A as there would be no point given that the criteria for Paragraph B had already failed."); *cf. Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (stating that "the omission of the 'paragraph A' analysis does not render the ALJ's decision unreviewable" where "[i]t is quite plain that the ALJ's decision rested on the absence of both 'paragraph B" and 'paragraph C' criteria[.]").

[7] A "marked" limitation means that the claimant is seriously limited in her ability to function independently, appropriately, and effectively and on a sustained basis in a specified area. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A2b, 12.00F2d. An "extreme" limitation means that the claimant is unable to function independently, appropriately, and effectively on a sustained basis in a specified area. *Id*. at § 12.00A2b, 12.00F2e.

environment or to demands that are not already part of her daily life. *Id.*; *see also id.* at §
12.00G2.

In the present case, the ALJ found at step two of the sequential evaluation that Plaintiff
suffered from the severe impairments of, *inter alia*, anxiety disorder, depressive disorder, and
PTSD. R. 514. The ALJ determined at step three that Plaintiff had only moderate limitations in
the four areas of mental functioning under paragraph B and, therefore, that her mental
impairments, whether considered singly or in combination, did not meet or medically equal a
listed impairment, including Listings 12.04, 12.06, and 12.15:

> The severity of the claimant's mental impairments, considered singly and in
> combination, do not meet or medically equal the criteria of listings 12.04, 12.06,
> and 12.15. In making this finding, I have considered whether the "paragraph B"
> criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments
> must result in one extreme limitation or two marked limitations in a broad area of
> functioning. An extreme limitation is the inability to function independently,
> appropriately, or effectively, and on a sustained basis. A marked limitation is a
> seriously limited ability to function independently, appropriately, or effectively,
> and on a sustained basis.
>
> I find that the claimant has moderate limitations in understanding, remembering, or
> applying information, interacting with others, concentrating, persisting, or
> maintaining pace, and adapting or managing oneself. A moderate limitation means
> that your functioning in this area independently, appropriately, effectively, and on
> a sustained basis is fair. Understanding, remembering, and applying information
> refers to the abilities to learn, recall, and use information to perform work activities.
> Interacting with others refers to the abilities to relate to and work with supervisors,
> co-workers, and the public. The ability to concentrate, persist, or maintain pace
> refers to the abilities to focus attention on work activities and stay on task at a
> sustained rate. The ability to adapt and manage oneself refers to the abilities to
> regulate emotions, control behavior, and maintain well-being in a work setting.
>
> I have made these findings having reviewed the medical evidence regarding the
> claimant's mental health as well as her testimony during the most recent hearing
> discussed further below. Records from Dr. Bhatt, a neurologist, from July 2012
> note that the claimant's mood and affect appeared normal and the claimant denied
> hallucinations or suicidal ideation at the time. (B3F). Records from Dr. McEwen
> set forth a diagnosis of depressive disorder and PTSD (provisional). (B10F/7).
> Clinically, there were some short-term memory impairment and OCD symptoms
> noted. (B10F/20). In January 2014, she was referred to her PCP for symptoms

including oversleeping, crying spells and fatigue. However, there is then a large gap in treatment spanning from February 2014 until September 2017, when she went to Trinitas RMC and was noted to have normal cognition, normal activities of daily living, and to have 'no difficulty' doing errands alone. (B12F/2). There is then another gap in treatment from then through September 2020, when she saw Dr. Bayes and was prescribed Xanax having reportedly experienced a panic attack the month prior. (B14F). Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

R. 516–17. The Court finds no error with the ALJ's reasoning in this regard. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.15; *Mitchell G. v. Kijakazi*, No. CV 20-15241, 2022 WL 1213355, at *6–7 (D.N.J. Apr. 22, 2022) (finding that the ALJ sufficiently discussed the paragraph B criteria and supported the conclusion that, *inter alia*, the claimant had a moderate limitation in her ability to adapt or manage herself where the evidence showed, *inter alia*, the claimant had appropriate grooming and hygiene, no problem getting along with medical providers or staff, a normal mood and affect, and no problems with temper control); *Corbett v. Saul*, No. 318CV01790MEMGBC, 2019 WL 4793043, at *8 (M.D. Pa. Sept. 10, 2019), *report and recommendation adopted*, No. CV 3:18-1790, 2019 WL 4750341 (M.D. Pa. Sept. 30, 2019) (finding that substantial evidence supported the ALJ's conclusion that the claimant did not meet the criteria for paragraph B where, *inter alia*, the claimant had a moderate limitation in concentrating, persisting, or maintaining pace, noting the claimant "generally showed appropriate attention and focus in the clinical setting but has a history of anger outbursts"; "able to perform simple math calculations and maintain logical conversations"; "no evidence of significant deficits in attention or memory, but she has shown poor insight and judgment on occasion"; "generally has intact thought processes with no delusions, perceptual disturbances, paranoia or suicidal ideation").

In challenging the ALJ's finding in this regard, Plaintiff first complains that "[n]o reason or rationale [was] given" for finding only moderate limitations in the four areas of mental functioning. *Plaintiff's Moving Brief*, ECF No. 12, pp. 41–42. However, the ALJ's discussion detailed above belies this complaint. R. 516.

Plaintiff also argues that the evidence upon which the ALJ relied in his step three discussion was "disjointed and selectively presented" without designating which area of mental functioning each piece of evidence applies. *Plaintiff's Moving Brief*, ECF No. 12, pp. 42–44. Plaintiff's argument is not well taken. As previously noted, an ALJ is not required to use "particular language" when determining whether a claimant meets a Listing; the discussion must simply provide for "meaningful review." *Jones*, 364 F.3d at 505. In other words, there is no requirement that the ALJ have organized his discussion in the way that Plaintiff prefers. *See id*. To the extent that Plaintiff complains that the evidence was "selectively presented," Plaintiff, who bears the burden at step three, cites to no record evidence to support this conclusory assertion. *See Plaintiff's Moving Brief*, ECF No. 12, pp. 42–44. Based on this record, Plaintiff has not shown that the ALJ erred in his consideration of the paragraph B criteria.

Plaintiff's challenge to the ALJ's consideration of the paragraph C criteria is similarly unavailing. *Plaintiff's Moving Brief*, ECF No. 12, p. 44. The ALJ found that Plaintiff did not satisfy the paragraph C criteria, reasoning as follows:

> I have also considered whether the "paragraph C" criteria are satisfied. The "C" criteria require[ ] a medically documented history of the existence of the disorder over a period of at least 2 years, and [ ] evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and (2) marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

R. 517. While this consideration of the paragraph C criteria was brief, the ALJ's discussion of

mental health evidence in connection with his discussion of the paragraph B criteria detailed

above, fairly read, also provides substantial support for the ALJ's paragraph C findings. R. 516–

17; *see also Fullen v. Comm'r of Soc. Sec.*, 705 F. App'x 121, 124 (3d Cir. 2017) ("In this case,

like *Jones*, the ALJ's decision, read as a whole, illustrates that the ALJ's conclusion that Fullen

did not meet the requirements for any Listing . . . was supported by substantial evidence.");

*Guzman v. Colvin*, No. 15-6564, 2016 WL 4745175, at *5–6 (D.N.J. Sept. 12, 2016) (finding

that "[t]he ALJ's explanation, while brief, is sufficient to permit meaningful review when

considered in the context of the opinion as a whole" where the ALJ stated that "'[t]he

undersigned has also considered whether the 'paragraph C' criteria were satisfied. In this case,

the evidence fails to establish the presence of the 'paragraph C' criteria'" and where the ALJ

considered evidence relevant to the paragraph B criteria at step four).

Plaintiff complains that this evaluation is simply a definition with no explanation, but her

conclusory, two-sentence challenge does not cite to any record evidence, nor does it otherwise

explain how her impairment(s) satisfies the paragraph C criteria. *See Plaintiff's Moving Brief*,

ECF No. 12, p. 44. Plaintiff, who bears the burden at step three, has not pointed the Court to any

evidence that she has satisfied the paragraph C criteria or that she meets or medically equals any

listed impairment. *See id.*; *see also Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162−63

(3d Cir. 2008) (finding that substantial evidence supported the ALJ's finding that the claimant's

impairments did not meet a listed impairment where the claimant "provides us with no citations

to any record evidence demonstrating that her impairments are of Listing-level severity");

*Meyler v. Comm'r of Soc. Sec.*, 283 F. App'x 884, 889 (3d Cir. 2007) (noting that the plaintiff

bears the burden of proving at step three that his impairments meet or medically equal a listing);

*Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005) ("The burden imposed on a claimant at step three is a far more exacting standard than step two's threshold (used to prevent frivolous claims), which requires that a claimant show that she suffers from a 'severe' impairment."). In short, and fairly reading the ALJ's decision as a whole, this Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments neither meet nor medically equal any listing, including Listings 12.04, 12.06, or 12.15. *See id.*

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's 2022 decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  September 12, 2024                           _____s/Norah McCann King_____
                                                                      NORAH McCANN KING
                                                                      UNITED STATES MAGISTRATE JUDGE